United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHELLEY BLAM,

      Plaintiff,

  v.

SCHERING-PLOUGH CORPORATION,

      Defendant

No. C-08-3944 MMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING COMPLAINT WITH LEAVE TO AMEND; VACATING HEARING**

      Before the Court is defendant Schering-Plough Corporation's motion to dismiss, filed August 25, 2008, as amended August 26, 2008. Plaintiff Shelley Blam has filed opposition, to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for October 3, 2008, and rules as follows.

      In her complaint, plaintiff alleges one claim, specifically, a claim for breach of contract. According to plaintiff, "[a]s a term of her employment with [defendant], plaintiff was promised that if she was terminated from her job as a result of workforce restructuring she would be paid 26 weeks of severance pay [and] [t]hat severance pay would only be reduced if she was terminated for bona fide 'nonperformance' of her job." (See Compl. ¶ BC-1.) Plaintiff alleges defendant breached such agreement by advising plaintiff she was being terminated for "nonperformance," when defendant actually terminated her as a result

of "workforce restructuring," and paid her the lesser sum available to persons terminated for "nonperformance."  (See Compl. ¶ BC-2.)

Defendant argues that plaintiff's state law claim is preempted by the Employee Retirement Income Security Act ("ERISA").  Defendant further argues that plaintiff's claim, properly construed as a claim for benefits under ERISA, may not be brought against defendant, plaintiff's former employer, but, rather, against the ERISA plan.

"A relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?"  Velvarde v. PACE Membership Warehouse, Inc., 105 F. 3d 1313, 1316 (9th Cir. 1997).  In applying such test, the Ninth Circuit has determined that an agreement covering ten employees, under which each employee was entitled to severance benefits if, following an acquisition, the employee was not offered "substantially equivalent" employment, constituted an ERISA plan, because the defendant had to "decide whether a complaining employee's job [was] 'substantially equivalent' to his pre-acquisition job" and was thus "obligated to apply enough ongoing, particularized, administrative, discretionary analysis to make the [agreement] a 'plan'."  See Bogue v. Ampex Corp., 976 F. 2d 1319, 1321, 1323 (9th Cir. 1992).  By contrast, the Ninth Circuit has determined that an agreement under which one particular employee was entitled to severance benefits according to one of two specified mathematical formulas, one formula applying if he was terminated "without cause" and the other applying if he was terminated "for cause," was not an ERISA plan, because "[o]nce [the defendant] decided to terminate [the plaintiff], the severance calculation became . . . a straightforward computation of a one-time obligation."  See Delaye v. Agripac, Inc., 39 F. 3d 235, 237-38 (9th Cir. 1994) (holding agreement at issue therein "does not implicate an ongoing administrative scheme"; distinguishing Bogue as involving agreement requiring "particularized" analysis that would need to be conducted anew each time an employee was terminated).

//

//

Here, the parties disagree as to whether the subject agreement requires an ongoing administrative scheme.  The agreement, titled the Schering-Plough Corporation Severance Benefit Plan ("the Plan"), provides, <u>inter alia</u>, that a "Terminated Employee[1] . . . who has provided the Company with at least 90 consecutive days of service" is entitled to severance benefits if the employee "incurs a Termination Due to Workforce Restructuring, a Termination Due to Non-Performance, or a Termination Due to Change of Control."  (<u>See</u> Sweeney Decl. Ex. A ¶ 2.01(a).)  The Plan defines "Termination Due to Workforce Restructuring"[2] as the "termination of an Employee's employment by the Company due to Decline to Relocate, a Job Elimination, a Job Restructuring, or such other termination determined by the Administrative Committee."[3]  (<u>See</u> <u>id.</u> Ex. A ¶ 1.25.)

Plaintiff alleges she was terminated "to make room for Dr. [Steven] Kolkin," who had worked for defendant in a department that had been "effectively eliminated."  (<u>See</u> Compl. ¶ BC-2.)  According to plaintiff, after plaintiff was terminated, defendant "formally assigned" Dr. Kolkin to plaintiff's job.  (<u>See</u> <u>id.</u>)  Because plaintiff's allegations do not implicate a termination occurring as a result of a "Decline to Relocate"[4] or a "Job Elimination," the severance benefits plaintiff seeks are available only if the termination occurred as a result

---

[1]The agreement defines a "Terminated Employee" as "an Employee who has experienced an Employment Termination Date."  (<u>See</u> Sweeney Decl. Ex. A ¶ 1.22.)  The agreement defines "Employee" as a "regular full-time or regular part-time employee of the Company who is employed in the United States . . . not covered by a collective bargaining agreement unless the collective bargaining agreement specifically provides for coverage under the Plan."  (<u>See</u> <u>id.</u> ¶ 1.10.)  The agreement also includes a more specific definition of a "regular part-time employee," and, further, provides six exemptions from the definition of "employee," such as "any employee who (i) is not a U.S. citizen, (ii) is on temporary assignment in the United States, and (iii) normally works outside the United States."  (<u>See</u> <u>id.</u>)

[2]As noted, plaintiff alleges that when she was terminated, she was entitled to receive, but did not receive, benefits available to a person terminated due to "workforce restructuring."  (<u>See</u> Compl. ¶¶ BC-1, BC-2.)

[3]The agreement defines "Administrative Committee" as "Schering-Plough Corporation's Employee Benefits Committee or its designee."  (<u>See</u> <u>id.</u> Ex. A ¶ 1.01.)

[4]A "Decline to Relocate" termination occurs where an employee rejects an "offer of continued employment in the same position or a Comparable Position that would require relocation of the Participant's principal business location of more than 50 miles."  (<u>See</u> Sweeney Decl. Ex. A ¶ 1.09.)

3

of a "Job Restructuring."

The Plan defines "Job Restructuring" as "a termination of a Participant's employment by the Company due to a change in required competencies or qualifications for the Participant's job, as determined by the Administrative Committee in its sole discretion, for purposes of the Plan only." (See Sweeney Decl. Ex. A ¶ 1.15.)

Where "the circumstances of each employee's termination have to be analyzed in light of certain criteria," the plan is deemed to "require[ ] an administrative scheme," and, consequently, is subject to ERISA. See Bogue, 976 F. 2d at 1323. Here, in order to determine if an employee is terminated on account of "Job Restructuring," the Administrative Committee is required to engage in an analysis of particularized facts pertaining to such employee's termination, in light of criteria set forth in the Plan. Specifically, the Administrative Committee is required to determine whether the "required competencies or qualifications" for the subject position were changed and whether the terminated employee had or did not have the requisite changed "competencies or qualifications." (See Sweeney Decl. Ex. A ¶ 1.15.) Because the Administrative Committee cannot "carry out that obligation with [an] unthinking, one-time, nondiscretionary application of the plan," see id., the Court finds the Plan is covered by ERISA.

Indeed, an agreement requiring determinations similar to those required under the instant Plan has been held to be an ERISA plan. In particular, where the severance benefits agreement therein at issue provided benefits to an employee terminated "due to circumstances such as elimination or modification of operations or other job elimination due to bona fide organizational changes," the Fourth Circuit found such agreement constituted an ERISA plan, see Holland v. Burlington Industries, Inc., 772 F. 2d 1140, 1144-45 (4th Cir. 1985) (rejecting argument that agreement not covered by ERISA because it only required "mere payroll practice[s]"); the Supreme Court subsequently cited the decision with approval, observing that because the employer "had made a commitment to pay severance benefits to employees as each person left employment," such commitment "created the need for an administrative scheme to pay [those] benefits on an ongoing basis," and,

1  consequently, there was "no question" the plan was subject to ERISA, see Fort Halifax
2  Packing Co. v. Coyne, 482 U.S. 1, 17-18 and n. 10 (1987) (distinguishing one-time
3  severance benefit payable on closure of plant).
4      In the instant case, plaintiff argues, the Court nonetheless should deny the motion as
5  premature, on the ground that discovery may confirm plaintiff's assertion that the Plan has
6  "no staff, no policies, no forms, no files, and no 'actual' administration except for the empty
7  'Potemkin Village' presented in the paperwork 'plan.'"  (See Pl.'s Opp. at 2:21-23; 8:24-9:6.)
8  In essence, plaintiff argues she may be able to establish that defendant has not complied
9  with the terms of the Plan and/or with ERISA requirements.  The Supreme Court has held,
10 however, that "[t]he fact that [an] employer [has] not complied with the requirements of
11 ERISA in operating" a plan does not take the plan out of ERISA.  See Fort Halifax Packing
12 Co., 482 U.S. at 18 n. 10; see also id. at 25-26 (White, J., dissenting) (noting, with respect
13 to earlier case where plaintiffs therein had alleged various forms of non-compliance,
14 including lack of established claims procedure, Supreme Court's implicit rejection of
15 argument that "a promise or agreement to pay severance benefits, without more, does not
16 constitute a welfare benefit plan within the meaning of ERISA").
17     Accordingly, plaintiff's state law claims will be dismissed, without prejudice to
18 plaintiff's filing an amended complaint alleging a claim for benefits under ERISA.  In any
19 such amended complaint, the proper defendant is the Plan.  See Gelardi v. Pertec
20 Computer Corp., 761 F. 2d 1323, 1324 (9th Cir. 1985) (holding "ERISA permits suits to
21 recover benefits only against the Plan as an entity").
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**CONCLUSION**

For the reasons stated above:

1. Defendant's motion to dismiss is hereby GRANTED; and

2. Plaintiff's complaint is hereby DISMISSED, with leave to file a First Amended Complaint to state a claim, against the Plan, for benefits under ERISA. Any such First Amended Complaint shall be filed no later than October 31, 2008.

**IT IS SO ORDERED.**

Dated: October 1, 2008

_____
MAXINE M. CHESNEY
United States District Judge